UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANN BOOHER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO. 1:22-cv-00016-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Kilolo Kijakazi, Acting Commissioner of Social Security Administration,* | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Ann Booher appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's final decision will be REVERSED, and the case REMANDED to the Commissioner.

**I. FACTUAL AND PROCEDURAL HISTORY**

Booher applied for DIB in November 2019, alleging disability since April 30, 2019. (ECF 9 Administrative Record ("AR") 15, 155). Booher's claim was denied initially and upon reconsideration. (AR 15, 63-82). On January 6, 2021, administrative law judge ("ALJ") Kathleen Winters held an administrative hearing at which Booher, who was represented by counsel, and a vocational expert ("VE") testified. (AR 31-62). On March 17, 2021, the ALJ rendered an unfavorable decision to Booher, concluding that she was not disabled because she could perform a significant number of unskilled, light-exertional jobs in the national economy, including small parts assembler, inspector and hand packager, and laundry folder. (AR 15-26). The Appeals

Council denied Booher's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

Booher filed a complaint with this Court on January 14, 2022, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Booher alleges that: (1) the ALJ erred when assessing the opinion of her treating physician, Thomas Ringenberg, D.O.; and (2) that the appointment of Andrew Saul as the Commissioner of Social Security violated the separation of powers, and thus, the ALJ's decision was constitutionally defective. (ECF 11 at 10-19).

At the time of the ALJ's decision, Booher was fifty-three years old (AR 26, 155); had obtained her GED (AR 179); and had past relevant work as a receiving clerk (AR 17, 179). When filing her DIB application, Booher alleged disability due to generalized anxiety disorder, bipolar disorder - manic depression, major depressive disorder, and hypertension. (ECF 178).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative

record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing

3

any work in the national economy.[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. "[An] affirmative answer leads either to the next step, or, on [s]teps three and five, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). "A negative answer at any point other [than step three] ends the inquiry and leads to a finding that the claimant is not disabled." *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

*B. The Commissioner's Final Decision*

On March 22, 2021, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-26). The ALJ found at step one that Booher had not engaged in substantial gainful activity after her alleged onset date of April 30, 2019. (AR 18). At step two, the ALJ determined that Booher had the following severe impairments: degenerative disc disease of the lumbar spine, bipolar I disorder, and generalized anxiety disorder. (*Id.*). At step three, the ALJ concluded that Booher did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Before proceeding to step four, the ALJ assigned Booher the following RFC:

[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except can frequently climb, balance, stoop, kneel, crouch, or crawl; can never climb ladders, ropes, or scaffolds. With work that can be learned in 30 days, or less, with simple routine tasks; routine work place changes; simple work related decisions; and with occasional interaction with coworkers and supervisors,

---

[1] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 404.1520(e).

and no interaction with the general public.

(AR 20).

Based on the assigned RFC and the VE's testimony, the ALJ found at step four that Booher was unable to perform her past relevant work. (AR 24). At step five, the ALJ found that Booher could perform a significant number of unskilled, light-exertional jobs in the economy, including small parts assembler, inspector and hand packager, and laundry folder. (AR 25). Therefore, Booher's application for DIB was denied. (AR 26).

### C. Dr. Ringenberg's Medical Source Statements

Booher argues that the ALJ erred when considering the medical source statements from Dr. Ringenberg, her treating primary care physician, and concluding they were "minimally persuasive." (ECF 11 at 11-16). While Booher's argument is not persuasive in its entirety, it does have merit in one respect, warranting a remand of this case to the Commissioner for reconsideration of the medical source opinions of record.

In assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 404.1520c(c); *see Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3

(N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Although the ALJ must consider all of these factors, [s]he need only explain how [s]he considered supportability and consistency." *Kaehr v. Saul*, No. 3:19-CV-1171-PPS, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021).

Dr. Ringenberg issued medical source statements in November 2018, January 2020, and October 2020, in which he assigned Booher quite restrictive limitations. (AR 331-33, 347-49, 351-56, 358-62, 364-65, 387-95). In discounting these medical source statements, the ALJ wrote:

> [Dr. Ringenberg] reported telling the claimant that she should stop working in November 2018 and continues to state she cannot work based on both physical and mental limitations. Specifically, he limited her to less than one hour each of standing, sitting, or walking in a work day. He reported she had postural limitations and, at most, could lift and carry less than 10 pounds. His assessments were not always consistent, such as stating in November 2018 the claimant could use a motor vehicle but then indicating in January 2020 she could only rarely use foot controls and stating she reported blackouts every two months. The medical evidence of record contains no evidence of treatment for "blackouts". In November 2018, he stated she was at maximum medical improvement, yet he had not treated the claimant's lumbar spine with anything more than medication, and the record does not show she saw a spine specialist or surgeon, or asked about low cost treatment options. In January 2020, he reported she needed periodic cane use but did not require use of an assistive device to ambulate effectively. He reported she had poor memory for 30 years, although the file does not include formal memory testing, and the record contains many years of work at substantial gainful activity levels. In October 2020, Dr. Ringenberg stated the claimant had marked to extreme limitations in mental functioning. However, he had not referred her to any mental health specialists, or therapy. She has not had emergency room, crisis center, or inpatient mental health treatment. [Dr. Ringenberg's] incredible restrictive limitations are not supported by his or other examination notes or consistent with the overall record. Therefore, they are minimally persuasive. Further, the issue of whether or not a claimant is disabled or unable to work is an issue reserved to the Commissioner.

(AR 23 (internal citations omitted)).

Unpacking this paragraph, the ALJ discounted Dr. Ringenberg's medical source

6

statements because they lack support in his own treatment records, and the medical source statements appear internally inconsistent in certain respects, as well as inconsistent with other material evidence of record. *See Kaehr*, 2021 WL 321450, at *3 ("[T]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." (alteration in original) (quoting 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a))). Indeed, there are very few actual treatment notes from Dr. Ringenberg in the record (AR 328-30, 344-46, 398-99, 402-04), and the examples of internal inconsistency described by the ALJ are apparent in the record (*see* AR 331-33, 347-49, 351-56, 358-62, 364-65, 387-95). As such, the ALJ provided at least two valid reasons—lack of supportability and internal inconsistency, 20 C.F.R. § 404.1520c(c)—for discounting Dr. Ringenberg's medical source statements.

Nevertheless, Booher contends that the ALJ's analysis of Dr. Ringenberg's medical source statements was deficient under 20 C.F.R. § 404.1520c. She first argues that the ALJ erred by relying, at least in part, on her sparse treatment record in discounting Dr. Ringenberg's opinion, asserting it is not one of the factors identified in § 404.1520c(c). (ECF 11 at 11). But § 404.1520c(c) includes both the "[f]requency of examinations" and the "[e]xtent of the treatment relationship," which is defined as "[t]he kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories [that] may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s)." Thus, Booher's treatment history is relevant under § 404.1520c(c), particularly with respect to any treatment that Dr. Ringenberg himself prescribed or provided.

Next Booher contends the ALJ improperly drew inferences about her infrequent medical

7

visits or failure to seek treatment, asserting that "the ALJ should not have prioritized [her] lack of treatment with free or low cost clinics to demonstrate that the opinions of record were inconsistent with and unsupported by the record." (ECF 11 at 13). This argument, too, is unconvincing. The ALJ did not err by considering Booher's infrequent treatment when assessing Dr. Ringenberg's opinion because the ALJ *also* duly considered Booher's proffered reason for her infrequent treatment—that she did not have medical insurance at times and did not have the financial resources to pay out-of-pocket. (AR 21-24); *see Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) ("[A]n ALJ first must consider the claimant's explanations for [a failure to pursue treatment]. Here, the ALJ did so, asking Morrison why he did not follow up on referrals for psychiatry, pain management, and neurosurgery. She then considered his explanation (that he could not afford the services due to poor or no insurance) but ultimately rejected it. She did so in part because Morrison did not seek out lower-cost options." (emphasis and citation omitted)).

Booher next contends the ALJ failed to appropriately account for that Dr. Ringenberg had a four-year treatment relationship with her "and treated her multiple times annually during the adjudicatory period." (ECF 11 at 16). As Booher's argument goes, her four-year treatment relationship with Dr. Ringenberg should have trumped the opinions of the reviewing state agency doctors at the reconsideration level, J.V. Corcoran, M.D., and Joelle Larson, Ph.D., which the ALJ found "mostly persuasive." (AR 23; *see* AR 69-81). Not necessarily so. "The factors of supportability . . . and consistency . . . are the most important factors" for the ALJ is to consider when determining how persuasive a doctor's medical source statement is. 20 C.F.R. § 404.1520c(b)(2).

Booher does, however, make one argument pertaining to Dr. Ringenberg's opinion—as

8

well as the examining opinions of Stephen Parker, M.D., and Russell Coulter-Kern, Ph.D., H.S.P.P.—that has traction. Booher contends that the ALJ mischaracterized the record when stating that Dr. Corcoran's and Dr. Larsen's reviewing opinions were "*mostly consistent with the claimant's presentation at the consultative examinations* and with her minimal physical and mental health treatment." (AR 23 (emphasis added); *see* ECF 11 at 14-15). The record defies the first part of the ALJ's statement.

To explain, after reviewing the record on March 9, 2020, Dr. Corcoran opined that Booher could lift ten pounds frequently and twenty pounds occasionally, stand or walk about six hours in an eight-hour workday, and frequently perform various postural actions, such as climbing, balancing, stooping, kneeling, crouching, and crawling. (AR 76). But Dr. Parker, who examined Booher on February 29, 2020, indicated that she could walk just twenty-five feet, stand fifteen minutes, and climb just four-to-five stairs; had a "slow antalgic gait" that "favors left"; was unable to walk on heels or toes or squat; and had an "ataxic" tandem walk. (AR 368, 372). While Dr. Parker found that Booher had normal posture, strength, reflexes, and sensation, he observed that she had difficultly getting on and off the table and "rolled" to do so, had positive straight leg raising tests in both sitting and supine, and had lumbar pain and stiffness. (*Id.* at 373-74). Dr. Parker opined that Booher's ability to ambulate effectively was "very low" and that she could not stand or walk two hours in an eight-hour workday. (AR 373).

The contrast between Dr. Corcoran's reviewing opinion and Dr. Parker's examining opinion about Booher's physical limitations, therefore, is quite stark. Dr. Corcoran, who reviewed the record but did not examine Booher, opined that she could stand or walk six hours in an eight-hour workday, while Dr. Parker, who did examine Booher, wrote that she could not

9

stand or walk even just two hours in an eight-hour workday. Simply put, the ALJ's suggestion that these two opinions are "mostly consistent" is a mischaracterization of the record. *See Cleotilde D. v. Saul*, No. 18 C 7224, 2021 WL 428823, at *8 (N.D. Ill. Feb. 8, 2021) (remanding case where the ALJ mischaracterized a physician's opinion (collecting cases)). Rather, as Booher points out, Dr. Parker's examining opinion is more consistent with that of Dr. Ringenberg, who opined that Booher could stand, walk, or sit less than one hour in an eight-hour workday and rarely climb, balance, stoop, kneel, crouch, or crawl.[2] (ECF 11 at 14; *see* AR 351, 353, 388, 390).

Similarly, Booher contends that the ALJ mischaracterized the record when concluding that Dr. Larsen's opinion about her mental limitations, which the ALJ also found "mostly persuasive," was "*mostly consistent with [Booher's] presentation at the consultative examinations* and with her minimal physical and mental health treatment." (AR 23 (emphasis added); *see* ECF 11 at 14-15). After reviewing the record on March 9, 2020, Dr. Larsen opined

---

[2] Furthermore, the ALJ failed to adequately articulate her reasons for finding Dr. Parker's opinion just "partially persuasive." (AR 23); *see, e.g.*, *Terry H. v. Saul*, No. 19 cv 3652, 2020 WL 4015328, at *6 (N.D. Ill. July 16, 2020) (remanding case where "the Court cannot trace the ALJ's reasoning behind the decision to discount Dr. Obert-Hong's opinions"). The ALJ wrote that the physical limitations assessed by Dr. Parker were "somewhat supported by [Booher's] antalgic gait, positive straight leg raising, and inability to walk on heels or toes or squat," but were "*not consistent with the overall record as noted throughout this decision*." (AR 23 (emphasis added)). The ALJ, however, "does not state what portions of 'the overall record evidence' [s]he is relying upon to discredit [Dr. Parker]." *Stephenson v. Astrue*, No. 11 C 4429, 2012 WL 5463870, at *9 (N.D. Ill. Nov. 8, 2012); *see also Ulloa v. Barnhart*, 419 F. Supp. 2d 1027, 1036 (N.D. Ill. 2006) ("[T]he ALJ indicated that he rejected Dr. Shah's opinion because it was inconsistent with the objective medical findings and the overall record. However, the ALJ failed to explain *how* Dr. Shah's opinion was inconsistent with the objective medical findings or the overall record.").

And to the extent that Dr. Parker found Booher had normal posture, strength, reflexes, and sensation, this is not necessarily inconsistent with disabling chronic pain. "[A]s several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations, including limited abilities to stand or walk." *Otis S. v. Saul*, No. 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019); *see also id.* at *3 n.4 (collecting cases); *Fansler v. Astrue*, No. 1:07-CV-00081, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008) ("[I]t appears that the ALJ succumbed to the temptation to 'play doctor' when he independently concluded that normal muscle strength is inconsistent with chronic pain."). "An ALJ may not discount the opinion of an examining physician without a valid explanation . . . ." *Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) (citation omitted).

10

that Booher was either "[n]ot significant limited" or "[m]oderately limited" in various mental functions and could "understand, carry out and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; respond appropriately to brief supervision and interactions with coworkers and work situations; and deal with changes in a routine work setting." (AR 77-80).

But as Booher observes, Dr. Larsen's opinion is *not* "mostly consistent" with the findings of Dr. Coulter-Kern, who examined Booher on February 29, 2020. (ECF 11 at 15-16; *see* AR 379-82). Dr. Coulter-Kern assigned diagnoses of generalized anxiety disorder and bipolar disorder I, "current episode depressed, with psychotic features," opining that Booher would have "marked difficulty" understanding remembering, and carrying out instructions; responding appropriately to supervision and coworkers in a work setting; and coping appropriately to work pressures; and "moderate to marked difficulty" maintaining attention and concentration. (AR 382).

Again, the contrast between these two opinions assessing Booher's mental limitations is significant. Dr. Coulter-Kern, who examined Booher, found that she primarily had "marked" limitations in the various mental health functions, while Dr. Larsen, who reviewed the record but did not examine Booher, found that she was either "moderately limited" or "not significantly limited" in these areas of mental function. As such, the ALJ's description of these two opinions as "mostly consistent" is another mischaracterization of the record.[3] *See Cleotilde D.*, 2021 WL

---

[3] The ALJ also discounted Coulter-Kern's opinion because she viewed it as inconsistent "with the overall lack of mental health treatment besides medication, including no referrals to any low cost or free mental health providers." (AR 24). Of course, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (7th Cir. 1989). As the Seventh Circuit has emphasized, "mental illness in general and bipolar disorder in particular . . . may prevent the sufferer from . . . submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also Salaam*

428823, at *8 (collecting cases).

As Booher emphasizes, Dr. Coulter-Kern's opinion about Booher's mental limitations is actually more consistent with Dr. Ringenberg's October 2020 medical source statement, opining that Booher could maintain attention and concentration for no more than five minutes; would miss more than four days of work a month due to her mental symptoms; and could not work appropriately with the public, coworkers, or supervisors. (AR 391-95). Dr. Ringenberg further found that Booher was "[m]arkedly [l]imited" in understanding, remembering, or applying information; and remembering locations and work-like procedures; and "[e]xtremely [l]imited" in interacting with others; concentrating, persisting, or maintaining pace; adapting or managing onself; and understanding and carrying out very short and simple instructions, as well as detailed instructions. (AR 393-94).

Therefore, contrary to the ALJ's assessment of the medical opinions of record, Dr. Ringenberg's opinion *is* fairly consistent with the opinions of the two consulting examiners of record, Dr. Parker and Dr. Coulter-Kern. Further, the ALJ mischaracterized evidence of record when stating that Booher's presentation to the consulting examiners was "mostly consistent" with the findings of the reviewing state agency doctors—Dr. Corcoran and Dr. Larsen. (AR 23). Given these material discrepancies, the ALJ failed to build an accurate and logical bridge between the evidence of record and the weight she assigned to the various medical source opinions, including Dr. Ringenberg's, *see Paul*, 760 F. App'x at 464-65, which could ultimately

---

*S. v. Berryhill*, No. 17 C 5096, 2019 WL 1098932, at *6 (N.D. Ill. Mar. 8, 2019) (remanding case where the ALJ failed to "explain . . . why [the claimant's] lack of formal mental health treatment 'provides a reasonable basis to discount the . . . physician's opinion'" (quoting *Paul*, 760 F. App'x at 465)).

impact the physical and mental RFC assigned by the ALJ. Consequently, the ALJ's decision will be remanded for reconsideration of the medical source opinions of record and the resulting RFC.[4]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The clerk is directed to enter a judgment in favor of Booher and against the Commissioner.

SO ORDERED.

Entered this 31st day of October 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[4] Because a remand is warranted to reconsider the medical source opinions, the ALJ need not reach Booher's remaining argument asserting that the ALJ's decision was constitutionally defective.